IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LUCAS CROSTAROSA, individually, and on behalf of others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>LAZ PARKING LTD., PARKING REVENUE RECOVERY SERVICES, INC., and ASURA TECHNOLOGIES USA, INC.,<br><br>*Defendants.* | Civil Action No. |

## CLASS ACTION COMPLAINT

Plaintiff Lucas Crostarosa ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant LAZ Parking Ltd. ("LAZ Parking"), Defendant Parking Revenue Recovery Services, Inc. ("PRRS"), and Defendant Asura Technologies USA, Inc. ("Asura") (collectively, "Defendants").

## NATURE OF THE ACTION

1. This is a class action against Defendants for unlawfully obtaining and using personal information of drivers from their Driver Motor Vehicle records ("DMV records") in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA").

2.     Defendant LAZ Parking provides parking management services to businesses nationwide and is currently utilized in forty-two states, including Colorado.[1]

3.     Defendant LAZ Parking's website explains "LAZ Parking offers safe and convenient parking garages across the U.S. including Boston, Washington DC, Chicago, Los Angeles, Houston, San Diego, New York City, San Francisco & more."[2]  Defendant further explains "[o]ur hospitality parking expertise maximizes efficiency and profitability in multiple markets."[3]

4.     Defendant PRRS is a "parking compliance company"[4] who markets to client owners and parking operators for use of their "services in all types of properties, including commercial lots and garages, municipal facilities, college and university facilities, airports, hospitals, commercial properties and residential buildings."[5]

5.     As relevant here, Defendant PRRS enforces parking payments by utilizing technology that captures and reads the license plates on vehicles entering and exiting parking facilities managed by LAZ Parking.

6.     Defendant PRRS uses a video analytics system technology from Defendant Asura Technologies.  Asura says "[o]ur partnership with the US-based Parking Revenue Recovery Services (PRRS) commenced in 2021. Over the past three years, Asura has played a pivotal role in their business success."[6]

---

[1] https://www.lazparking.com/our-company/about/laz-fast-facts (last accessed Dec. 5, 2024).
[2] https://www.lazparking.com/our-company (last accessed Dec. 5, 2024).
[3] https://www.lazparking.com/our-company/parking-management-services (last accessed Dec. 5, 2024).
[4] https://prrsparking.com/ (last accessed Dec. 5, 2024).
[5] *Id.*
[6] https://asuratechnologies.com/parking/parking-compliance/ (last accessed Dec. 5, 2024).

7.      Defendant "Asura Technologies is an AI driven technology and solution provider for future mobility."[7] Asura Technologies provides "24/7 [p]arking [l]ot [a]utomation" and claims its "cutting-edge technology ensures continuous surveillance, eliminating gaps and providing real-time insights into parking compliance. Whether day or night, Asura's automated system keeps watch."[8] Among its surveillance technology offerings, Asura touts its "License Plate Recognition Engines" result in a "recognition rate of over 98%".[9]

8.      When Defendants capture a vehicle on the cameras that, according to them, has not properly paid for parking, Defendants, through the use of PRRS's license plate recognition technology, access the motor vehicle records associated with that license plate to obtain the personal information, including the name and address, of the individual to whom the vehicle is registered to.

9.      Defendant PRRS, on behalf of Defendant LAZ, then sends a Parking Notice ("Notice") in the mail to the registered owner's home address informing them that they are required to pay Defendant PRRS for the parking.

10.     The Notice states:

> The vehicle described above was parked on private property on the date of issuance and was in breach of the posted rules and use limitations of the property location identified above. The Parking Operator and Parking Revenue Recovery Services, Inc. are NOT governmental or affiliated agencies. After 14 days, the payment will be considered in default and this account assigned to a debt collector. The above vehicle may be subject to towing or booting, and the owner may be liable for additional costs and fees, to the extent permitted by law.

---

[7] https://asuratechnologies.com/ (last accessed Dec. 5, 2024).
[8] https://asuratechnologies.com/parking/ (last accessed Dec. 5, 2024).
[9] https://asuratechnologies.com/technology/ai-and-machine-learning/ (last accessed Dec. 5, 2024).

11. The Notice further lays out the Notice Number, Date Issued, Violation, Location, Balance Due, and the vehicle license plate number.

12. The Notice also contains timestamped photographs of the vehicle entering and exiting the property location.

13. Notably, the Notice does not include the actual rules and use limitations referred to in the Notice.

14. Defendants mail these Notices to both drivers who never paid for parking, and to drivers who did in fact pay for parking, yet Defendants allege they still owe payment.

15. Regardless, both drivers who pay and drivers who do not pay never supply Defendants with their mailing address.  At most, paying drivers supply Defendants only with their license plate number and their payment information.  Therefore, the only way Defendants are able to claim "a vehicle registered in your name" parked at one of Defendant LAZ Parking's facilities is by accessing the driver's motor vehicle records.

16. Thus, in blatant disregard of Plaintiff and Class members' privacy rights, and the DPPA, Defendants are illegally obtaining drivers' personal information through their DMV records.  Specifically, Defendants are obtaining their mailing address listed on their DMV record associated with the registered license plate/vehicle.

17. Defendant LAZ Parking's parking facilities do not inform drivers that their personal information will be collected through the use of license plate reading technology and unlawfully obtained through DMV records.

18. Defendants unlawfully obtain and use drivers' DMV record information to mail parking citations to both vehicle owners who did not pay for parking, and to vehicle owners that Defendants accuse of still owing money.

19. Moreover, the Notices typically inform vehicle owners that they owe Defendants large sums of money in excess of $80, despite the cost of parking being below that amount.

20. Defendants profit from the illegal use of drivers' personal information obtained through their DMV records by mailing fake parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums.

21. This is evidenced by the large volume of consumer complaints found online. For example, in a July 17, 2024 complaint posted on LAZ Parking's Better Business Bureau page a driver wrote:

> This parking lot is such a scam and should be shut down for fraud. Parked on 2 separate days and paid for both with my credit card at the kiosk. Then 3 months later I get a parking violation notice from my rental company stating I owe $122 for a parking violation for parking I paid for. They sent photos of me entering on 4/27/24 and leaving on 4/29/24. I literally paid for parking on 4/27/24 and drove to the mountains the morning of 4/28, then parked there again on 4/28 and left the morning of 4/29. They are acting as if I never paid for my parking at all. To top it all off the parking violation notice only gave me 2 weeks to pay the bill and when reaching out to the company to dispute the charge they sent an automated email stating it may take 2 weeks to respond. I refuse to pay for a violation I did not commit. If I had known how awful this was going to be I would've parked anywhere else.[10]

22. A similar complaint posted on April 3, 2023 reads:

> On February 25, 2023 I parked in a lot located at **********************************************. I paid at the parking meter located directly in front of the parking lot. On March 17, 2023 I received a notice from Parking **************************** dated 03/01/23. It stated (with a picture of my car) I had parked there from 3:43 pm to 6:49 pm, it claimed I did not pay, and that I owed $87.00 within 14 days. I e-mailed PRR on March 21st with a copy of my credit card receipt showing payment. On March 30, 2023 I received an e-mail back stating that the parking lot was private and that the meter on site was

---

[10] https://www.bbb.org/us/co/denver/profile/parking-facilities/laz-parking-midwest-llc-1296-90142287 (last accessed Dec. 5, 2024).

not for the lot. There were no signs posted stating the parking meter was not for the lot nor was there an attendant at the lot. The notice said I could pay $47 within 14 days or else the fine would go back up to $87. This company is clearly scamming people into paying a ridiculous amount of money for parking. I don't believe I should have to pay any additional parking fee and I hope others will learn from these reviews and not park at any lot LAZ controls.[11]

23. Another complaint posted on February 27, 2023 asserts similar grievances:

My wife parked our car at the \*\*\* Parking lot at 620 8th St. The parking machine noted it was out of paper for a receipt but could still be used to pay for parking. My wife put the card in and on the 3rd time thought it accepted the card for payment. We received a notice from Parking \*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Services saying that we had not paid. When I went and double checked our credit card it didn't have a charge on it. PRRS wanted $87 dollars from us for a $8.32 dollar parking fee and threatened us with a debt collection. We in good faith tried to pay for the parking fee and was willing to settle up but $87 dollars is over the top when they didn't have properly function parking meters to pay and get a receipt. We have parked in this lot many times in the past but will never again. Avoid this lot would be my advice.[12]

24. Plaintiff and Class members were never informed that their personal information would be obtained by Defendants through their DMV records or otherwise. Defendants obtain drivers' personal information, including their name and address, from their DMV records without the lawful consent of drivers, and without a lawfully permitted reason under the DPPA.

25. In doing so, Defendants use predatory tactics to obtain unlawful payments from drivers.

---

[11] https://www.bbb.org/us/tx/austin/profile/parking-facilities/laz-parking-0825-1000102315/complaints (last accessed Dec. 5, 2024).

[12] https://www.bbb.org/us/mn/saint-paul/profile/parking-facilities/laz-parking-midwest-llc-0704-1000015264/complaints#0704_1000015264_19504516 (last accessed Dec. 5, 2024).

**A.     The DPPA**

26.     In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

27.     Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

28.     The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

29. Regrettably, there are still occasions where bad faith actors like Defendants disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. Defendants' entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass, intimidate, deceive, and ultimately defraud consumers. This action aims to stop Defendants' unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

**B.      Defendants Violate The DPPA**

30. The DPPA governs the manner by which certain personal information can be accessed or disclosed through DMV records and imposes penalties for violations of its provisions.

31. Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

32. Defendants are "person[s]" within the meaning of 18 U.S.C. 2725(2).

33. Defendants obtained Plaintiff's and Class members' "Personal Information" as defined by the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  18 U.S.C. § 2725.

34. A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id*.

35. DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare.

36. Defendants did not receive Plaintiff's or Class members' express written consent prior to accessing their personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12). The DPPA does not provide a lawful basis for Defendants to obtain said information.

37. Plaintiff and Class members never waived their rights to privacy under 18 U.S.C. § 2721(d).

38. Defendants' use of official motor vehicle records to obtain the personal information of Plaintiff and Class members, and send parking citations when applicable, is not permissible under the DPPA.

39. Defendants' conduct as set forth above caused Plaintiff and Class members harm, including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion, harassment and annoyance.

40. Accordingly, Plaintiff has standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''") (quoting William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 389 (1960)).

## PARTIES

41. Plaintiff Lucas Crostarosa is a natural person and resident of Littleton, Colorado. In or around February 25, 2022, Mr. Crostarosa parked at Defendant LAZ Parking's parking facility located at 2000 Larimer St., Denver, Colorado ("Parking Facility"). *See* Figure 1.

**Figure 1**



42. Mr. Crostarosa entered and exited the Parking Facility at night and parked in the back of the lot.

43. The following month, in or around March 2022, Mr. Crostarosa received the following Notice in the mail at his home address from Defendant[13]:



---

[13] Plaintiff's mailing address, license plate number, and QR code have been redacted from the Notice.

44. Defendants sent the Notice to Plaintiff's address listed on the title for the vehicle/license plate. Plaintiff did not pay the citation.

45. Upon scanning the QR code on the Notice and inputting the relevant information, Plaintiff was brought to following payment screen[14]:



46. Defendants' payment screen URL begins with "arc.asuratechnologies.com" which is a reference to Defendant Asura's "Automatic Real-time Compliance (ARC) package, a multi-level solution that has proven beneficial for both operators and PRRS."[15] *See* Figure 2, next page.

---

[14] Plaintiff's license plate has been redacted for the filing of this Complaint. The web payment page included his license plate in the webpage URL.

[15] https://asuratechnologies.com/parking/parking-compliance/ (last accessed Dec. 5, 2024).

Figure 2



47.     Defendant LAZ Parking Ltd. is a Connecticut based limited company with its principal place of business located at 15 Lewis Street, Hartford, CT 06103.

48.     Defendant Parking Revenue Recovery Services Inc. is a Colorado corporation with its principal place of business located at 12381 East Cornell Avenue, Aurora, CO 80014.

49.     Defendant Asura Technologies USA, Inc. is a Colorado corporation with its principal place of business located at 6025 South Quebec Street, Suite 350, Centennial, CO 80111.

## JURISDICTION AND VENUE

50. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 because the claims asserted arise from a federal statute.

51. This Court has personal jurisdiction over Defendant LAZ Parking Ltd. because Defendant regularly transacts business within the State of Colorado and operates eighty-four (84) parking locations in Denver, and the wrongful acts alleged herein were committed in substantial part in Colorado.

52. This Court has personal jurisdiction over Defendant Parking Revenue Recovery Services Inc. because Defendant has its principal place of business in Colorado, Defendant is authorized to do business and in fact does business in this judicial district, and the wrongful acts alleged herein were committed in substantial part in Colorado.

53. This Court has personal jurisdiction over Defendant Asura Technologies USA, Inc. because Defendant has its principal place of business in Colorado, Defendant is authorized to do business and in fact does business in this judicial district, and the wrongful acts alleged herein were committed in substantial part in Colorado.

54. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

55. Plaintiffs and Class members never waived their rights to privacy under 18 U.S.C. § 2721(d).

## CLASS ALLEGATIONS

56. **Class Definition:** Plaintiff brings this action on behalf of himself, and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows: All natural persons in the United States whose Personal

Information, as defined by the DPPA, was obtained, used and/or disclosed by Defendants, and/or any of their agents, in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

    57.    Expressly excluded from the Class are:

        (a)    Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

        (b)    Defendants and any entity in which Defendants have a controlling interest, or which has a controlling interest in Defendants, and their legal representatives, assigns and successors; and

        (c)    All persons who properly execute and file a timely request for exclusion from the Class.

    58.    **Numerosity:**  The number of persons within the Class is substantial, believed to amount to thousands of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendants' records.

    59.    **Commonality and Predominance:**  There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

        (a)    Whether Defendants' parking notice is uniform in all relevant aspects for the Class;

  (b)  Whether Defendants had any permissible purpose within the meaning of the DPPA when they obtained the Personal Information of Plaintiff and the Class;

  (c)  Whether Defendants obtained, disclosed, or used the Personal Information of Plaintiff and the Class in violation of the DPPA and are therefore liable to Plaintiff and the Class;

  (d)  Whether Plaintiff is entitled to a judicial determination that Defendants' actions violate the DPPA;

  (e)  Whether Defendants' systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Defendants and in favor of Plaintiff and the Class, as provided by the DPPA; and

  (f)  Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of such damages.

60. **Adequate Representation:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendants took.

61. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which

individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with the DPPA.

<u>**COUNT I**</u>
**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Class).**

62.   Plaintiff repeats and re-allege the allegations set forth in paragraphs 1-55, as if set forth fully herein.

63.   The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA

64.   The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

65.   Defendants knowingly obtained, disclosed and used personal information from a motor vehicle record in order to track who utilizes its parking facilities and to send Plaintiff and Class members an illegal parking citation, which is not a permissible purpose under the DPPA.

66.     Upon information and belief, Defendants acted with respect to Plaintiff and Class members in willful, or at the very least, reckless disregard of the law in that Defendants knew it was unlawful to access, disclose, obtain and/or use Plaintiff and Class members' personal information from non-public motor vehicle records in violation of the DPPA.

67.     Plaintiff and Class members did not provide Defendants with any form of consent to access their personal information from their driver motor vehicle records.

68.     Plaintiff and Class members were harmed by Defendants' conduct in that Defendants violated Plaintiff and Class members right to privacy and statutory rights.

69.     On behalf of herself and Class members, Plaintiff seeks: (i) declaratory relief; (ii) injunctive relief and equitable relief as is necessary to protect the interests of Plaintiff and Class members by requiring Defendants to comply with DPPA and/or seize their current practices; (iii) statutory damages of $2,500 per violation of the DPPA pursuant to 18 U.S.C. § 2724(b) of the DPPA; and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgement against Defendants, individually and on behalf of all others similarly situated, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the Class representative, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendants' conduct violates the DPPA, as reference herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     An award of statutory damages equal to actual damages, but not less than liquidated damages in the amount of $2,500;

(e) Punitive damages upon proof of willful or reckless disregard of the law;

(f) For an order permanently enjoining Defendants from further violating the DPPA;

(g) For an order awarding Plaintiff and Class members their reasonable attorneys' fees and expenses.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury on all claims so triable.

Date: January 21, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Max S. Roberts*
    Max S. Roberts

Max S. Roberts
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorney for Plaintiff*